**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON**

| | | |
|---|---|---|
| DARYL MACKLIN, | ) | CASE NO. 1:21-CV-01065-CEH |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | CARMEN E. HENDERSON |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | MEMORANDUM OPINION AND |
| Defendant, | ) | ORDER |
| | ) | |

## I.    Introduction

Plaintiff, Daryl Macklin, seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 12). Because the ALJ followed proper procedures and her findings are supported by substantial evidence, the Court AFFIRMS the Commissioner's final decision denying Macklin SSI and DIB.

## II.    Procedural History

On October 10, 2019, Macklin filed applications for SSI and DIB, alleging a disability onset date of June 30, 2016. (ECF No. 10, PageID #: 132). The applications were denied initially and upon reconsideration, and Macklin requested a hearing before an administrative law judge ("ALJ"). (ECF No. 10, PageID #: 193). On November 4, 2020, an ALJ held a hearing, during which Macklin, represented by counsel, and an impartial vocational expert testified. (ECF No. 10, PageID #: 91). On November 24, 2020, the ALJ issued a written decision finding Macklin

was not disabled. (ECF No. 10, PageID #: 67). The ALJ's decision became final on March 18,

2021, when the Appeals Council declined further review. (ECF No. 10, PageID #: 56).

On May 21, 2021, Macklin filed his Complaint to challenge the Commissioner's final

decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 15, 16).

Macklin asserts the following assignments of error:

> Mr. Macklin meets Listing 12.03. The Administrative Law Judge
> ("ALJ") committed reversible error at Step 3 by failing to
> adequately analyze Mr. Macklin's ability to adapt to the
> requirements of daily life. The ALJ's unexplained assertion that
> Mr. Macklin "reported some improvement in his mental health
> symptoms" is insufficient justification to show why Mr. Macklin
> does not meet Listing 12.03.

(ECF No. 15 at 3).

## III.    Background[1]

### A.        Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Macklin's hearing:

> The claimant alleged that he was unable to perform work due to
> the limiting signs and symptoms of his severe impairments. The
> claimant testified that he experienced left knee and back pain that
> made it difficult to stand for long periods. He explained that he
> treated with a knee brace and Tylenol. He stated that he had
> trouble with mental health issues, including panic attacks three to
> four times per week. The claimant testified that he could not be
> around others as he felt that people were out to hurt him. He stated
> that he did not shower or change his clothes daily. He explained
> that he did not feel he could tolerate stress or adapt to changes. The
> claimant testified that he attempted suicide in the past and would
> rather just sit alone in his room. In an adult function report, the
> claimant reported difficulty with lifting, squatting, bending,
> standing, reaching, walking, sitting, kneeling, talking, stair
> climbing, memory, completing tasks, concentration, understanding,
> following instructions, getting along with others, and handling

---

[1] Macklin's sole argument relates to his mental health impairments. The Court's
discussion of the medical evidence, therefore, focuses on the same.

stress and changes in routine.

(ECF No. 10, PageID #: 76).

**B.      Relevant Medical Evidence**

The ALJ also summarized Macklin's health records and symptoms:

> The claimant [] treated for depressive, bipolar and related
> disorders, anxiety and obsessive-compulsive disorders, and trauma
> and stressor-related disorders. On June 9, 2018, the claimant
> presented to the emergency department for depression and
> thoughts of harming himself. He complained of feeling depressed
> progressively since December 2017 after his grandmother's death.
> He stated that he felt overwhelmed and hopeless due to taking care
> of his mother who had kidney failure and engaged in dialysis three
> times per week. He stated that he used crack cocaine every two to
> three days and marijuana occasionally. Upon mental status
> examination by Alisa Paliy, M.D., the claimant was tearful and his
> affect was constricted. His thought content included vague
> thoughts of harming self, but he did not express any delusions or
> ideas of reference. However, his hygiene and grooming were fair.
> He was cooperative with consistent eye contact. The claimant's
> thought process was logical, linear, and goal directed. He denied
> auditory and visual hallucinations. He did not appear internally
> stimulated. Dr. Paliy's initial impression was that [t]he claimant
> had depression. He was admitted to the psychiatric unit for 23-
> hour observation. Treatment records note that the claimant had not
> felt any better since coming to the emergency department. It was
> also noted that the emergency room visit was the first time seeing a
> psychiatrist and he had never been prescribed psychotropic
> medication. Additionally, the claimant was willing to voluntarily
> sign in for a psychiatric admission at a facility, but treatment was
> started in the emergency department with Prozac, Atarax, Tylenol,
> and trazodone. (3F, 62-75).
>
> On July 20, 2018, the claimant attended a community psychiatric
> supportive treatment (CPST) appointment with Erica Campbell,
> QMHS-B. He appeared to be in a good mood and he was actively
> engaged and participated in the appointment. The claimant
> reported to having no signs of depression. (4F, 24). Ms. Campbell
> noted that the claimant appeared to be in a good mood on August
> 3, 2018. They discussed some depression symptoms that he was
> experiencing and he was provided with interventions that could
> assist the claimant with managing the symptoms. (4F, 28).
> Treatment records from July 2018–December 2018 with Kathleen

3

Miller, LSW reflect that the claimant missed therapy appointments and was eventually closed for counseling services. (4F, 25-27, 31, 35-36).

The claimant attended a psychiatry appointment on August 16, 2018 with James Ward, CNP. The claimant reported having poor sleep, but a slightly improved mood. He stated that he was sober from cocaine for three months. Mr. Ward felt that the claimant was making some progress toward his treatment objectives. His assessment of claimant reflected diagnoses of major depressive disorder, recurrent, moderate, unspecified trauma and stressor-related disorder, and cocaine use disorder, currently sober three months. He increased the claimant's dosages of Celexa and trazodone. (4F, 29-30).

On October 19, 2018, the claimant returned to see Mr. Ward. He explained that he ran out of medications and did not have insurance. He rated depression at a nine out of 10 and chronic passive suicidal ideation and poor sleep. Upon mental status examination, the claimant's affect was flat and constricted, but congruent to mood, appropriate, and stable. His mood was depressed. He had a mild impairment of judgment. However, he made good eye contact and he was calm, pleasant, cooperative, engaged, neat, clean, and appropriately dressed. The claimant's thought process was goal-directed, linear, and coherent. He denied suicidal thoughts. He had moderate insight and intact cognition. Mr. Ward stated that the claimant had a depressed mood in the context of non-adherence and brief disengagement. He noted that the claimant was willing to restart medication as he reported having a partial response since his dosage was increased at the last visit. He restarted the claimant on citalopram and trazodone. (2F, 2-3).

Treatment records reflect that the claimant was hospitalized from May 6, 2019 to May 9, 2019 for major depressive disorder, recurrent, severe, without psychotic features, anxiety disorder, unspecified after presenting to the emergency department for taking trazodone in a suicide attempt on May 4, 2019. He was medically cleared before being admitted to the psychiatric unit. During his hospitalization, his mood and affect had gradually improved and the claimant denied any thoughts of suicide or harming self or others. Upon mental status examination at discharge, the claimant's mood and affect were less depressed. His thought[s] were future oriented. He denied suicidal or homicidal ideation. His cognition, memory, and concentration were intact. The claimant made good eye contact. He denied anxiety. His

4

judgment and insight were fair. . . .

On September 17, 2019, the claimant attended an assessment with Megan Brown, LISW. He discussed [that he] needed to re-engage in psychiatry and case management support to follow up on social security benefits. He reported no major changes since his last linkage for services completed in June 2018 after a hospitalization for suicidal ideation. He complained of depressive symptoms including suicidal ideation, anhedonia, feelings of hopelessness, sadness and difficulty sleeping and anxiety symptoms. It was noted that the claimant had a history of post-traumatic stress disorder (PTSD) symptoms, but the claimant did not endorse those symptoms during the current mental health assessment. . . . Ms. Brown diagnosed the claimant with major depressive disorder, recurrent episode, unspecified and anxiety, as well as a rule out diagnosis of PTSD. (4F, 6-14).

The claimant attended a counseling appointment with Mordechai Berkowitz, LSW on September 24, 2019. He stated that he had symptoms of depression and he reported attempting suicide in June 2019, but he was okay. He explained that he felt depressed a little based on financial issues and taking care of his mother. It was noted that the claimant presented with a full affect and a positive mood. (4F, 42).

On October 21, 2019, the claimant returned for an appointment with Mr. Ward. Record note that the claimant was last seen November 2018 and had missed several scheduled appointments. He stated that in June 2019 he began feeling a little paranoid, worried about a break-in, and thinking people were looking at him. He stated his mood was depressed all the time and he had auditory and visual hallucinations, but denied active suicidal ideation. Upon mental status examination, the claimant had a depressed mood with a flat and constructed affect that was congruent to mood, appropriate, and stable. His insight was limited and his judgment showed a mild impairment. However, he was calm, pleasant, cooperative, engaged, neat, clean, and appropriately dressed. He had good eye contact. The claimant's thought process was goal-directed, linear, and coherent. He denied suicidal thoughts. Mr. Ward diagnosed the claimant with major depressive disorder, current, severe, with psychosis. He was started on Abilify and melatonin and he was restarted on Celexa. (5F, 9-11). Treatment records from November 20, 2019 with Mr. Ward reflect medication changes due to side effects. His Abilify was stopped and replaced with Zyprexa. The claimant's Celexa was increased and continued on melatonin. (5F, 6-8).

5

The claimant attended a telehealth session with Mr. Ward on March 26, 2020. Mr. Ward noted that he last saw the claimant in November 2019. The claimant stated that he was feeling mildly depressed in the setting of pandemic, increased anxiety at night, and continued paranoid ideation. He denied suicidal ideation. He stated that he had been okay and spent his day busy watching television. He explained that he tried to stay busy with household chores. Upon mental status examination, the claimant's mood was depressed and he had hallucinations. His insight was limited and his judgment had a mild impairment. However, the claimant was cooperative, engaged, calm, and pleasant. His cognition was intact and his thought process was goal-directed, linear, and coherent. He denied suicidal ideation. Mr. Ward stated that the claimant's most significant stressor was non-adherence for the past two months and he felt that again the claimant's psychotic symptoms have an unclear context. He restarted the claimant's Zyprexa and Celexa and continued the claimant on melatonin. (8F, 9-12). Treatment records from April 23, 2020 with Mr. Ward reflect that the claimant attended a telehealth session. He stated that everything was okay right now and went to the park that week. He explained that he was contemplating getting more exercise. The claimant reported feeling anxious in crowds and social situations. Mental status examination findings include a euthymic mood, being cooperative, engaged, and accessible, a goal-direct, linear, and coherent thought process, improving hallucinations and paranoia, moderate insight, no impairment of judgment, intact cognition, and a denial of suicidal thoughts. Mr. Ward increased the claimant's dosage of Celexa and continued the claimant's other medication. (8F, 12-16). Additional treatment records from May 20, 2020 with Mr. Ward reflected medication changes. The claimant's Zyprexa was discontinued due to ineffectiveness. He was started on Abilify and Cogentin and he was continued on Celexa and melatonin. (8F, 16-20).

On June 23, 2020, the claimant had another telehealth session with Mr. Ward. He explained that he was unable to work due to paranoid ideation, wanting to be in his room and do nothing, knee and back pain. He reported his sleep was improving and that his depression was still there, but not as bad. There was no objective evidence of psychosis, but the claimant continued to report hearing vague intermittent voices. He explained that he was increased walking for exercise. Mental status examination findings were similar to those from April 2020. Mr. Ward noted that the claimant had reported his mood and sleep had slightly improved. He recommended counseling for treatment the claimant's depression

and anxious distress. He explained that the claimant endorsed intermitted auditory hallucinations upon assessment, but their reported quality was inconsistent and had an unclear context. Mr. Ward did not suspect a thought disorder at that time. He continued the claimant on his medication. (8F, 20-24). . . .

The claimant participated in another telehealth session with Mr. Ward on August 18, 2020. The claimant reported a first incident ever of visual hallucinations. He explained that he was tolerating his medications well and he denied side effects. Upon mental status examination, the claimant[] had hallucinations and paranoia. However, his mood was euthymic. He was cooperative, engaged, and accessible. The claimant's thought process was goal-directed, linear, and coherent. He denied suicidal ideations. The claimant's cognition was intact. He exhibited no impairment of judgment and moderate insight. Mr. Ward stated that despite no triggers and full adherence, the claimant continued to report inconsistent psychotic symptoms without clear context. He explained that the claimant reported a new onset of visual hallucination experience, which was an isolated incident, and with no precipitating factors. He noted that he could not rule out secondary gain to secure disability benefits. However, Mr. Ward stated that the claimant still endorsed depression and subjectively bothersome psychotic symptoms that might be mood congruent. He increased the claimant's dosage of Abilify. (9F, 17-20).

(ECF No. 10, PageID #: 81).

## IV.   The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

3. The claimant has the following severe impairments: osteoarthritis and allied disorders (left knee), essential hypertension, degenerative disc disease (thoracic and lumbar), obesity, depressive, bipolar and related disorders, anxiety and obsessive-compulsive disorders, and trauma and stressor-related disorders (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift, carry, pull and pull 20 pounds occasionally and 10 pounds frequently, he can stand and/or walk four hours in an eight-hour workday, he can sit for six hours in an eight-hour workday, he can frequently climb ramps and stairs, he can never climb ladders, ropes, or scaffolds, he can occasionally stoop, kneel, crouch, and crawl, he should never be exposed to hazards of unprotected heights and dangerous machinery, and he is limited to occasional routine workplace changes.

(ECF No. 10, PageID #: 72–73, 75).

## V.  Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B.**        **Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform his past relevant work in light of his residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C.**        **Discussion**

Macklin raises one issue on appeal. He argues that the ALJ erred in her analysis of Listing 12.03—Schizophrenia spectrum and other psychotic disorders—and that he met each of the listing's requirements. Generally, to meet a listing, the claimant "must satisfy all of the [listing's] criteria." *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *3 (6th Cir. Aug. 10, 2020). The claimant "bears the burden of showing that an impairment meets or equals a listed impairment." *Id.* As long as the ALJ's listing finding is supported by substantial

9

evidence, based on the record as a whole, the Court will defer to the ALJ's finding, "[e]ven if the record could support an opposite conclusion." *Id.* at *2.

Listing 12.03 is satisfied by meeting the criteria of its subsections A and B or its subsections A and C. 20 CFR. § 404 Subpart P, App. 1, § 12.03. Macklin concedes that he does not meet the requirements of subsection B, but argues that he meets subsections A and C. Subsections A and C require:

> A.  Medical documentation of one or more of the following:
>
>> 1.  Delusions or hallucinations;
>>
>> 2.  Disorganized thinking (speech); or
>>
>> 3.  Grossly disorganized behavior or catatonia.
>
> C.  Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
>> 1.  Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and
>>
>> 2.  Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

*Id.* (emphasis removed) (citations omitted).

It is undisputed that Macklin meets the A criteria, as the ALJ acknowledged—and the record demonstrates—that Macklin experienced hallucinations. (ECF No. 10, PageID #: 80); (ECF No. 16 at 11). There is similarly no dispute that Macklin meets the first prong of the C criteria. The ALJ determined that Macklin's mental impairments have persisted for more than two years and he was receiving treatment in the form of outpatient medication management,

psychiatric hospitalizations, and counseling. (ECF No. 10, PageID #:75); (ECF No. 16 at 11). The dispute, therefore, centers around whether Macklin meets the second prong of the C criteria—evidence of marginal adjustment. The regulations clarify that:

> The criterion in C2 is satisfied when the evidence shows that, despite your diminished symptoms and signs, you have achieved only marginal adjustment. "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

20 CFR. § 404 Subpart P, App. 1, § 12.00.

In concluding that Macklin did not meet the criteria of this prong, the ALJ reasoned that the "evidence fails to show that the claimant has achieved only marginal adjustment (i.e. he has only a minimal ability to adapt to changes in his environment and daily life). On the contrary, it is clear from the record that the claimant reported some improvement in his mental health symptoms." (ECF No. 10, PageID #: 75). Macklin argues that the ALJ failed to adequately analyze his ability to adapt to the requirements of daily life and that the ALJ's reliance on "some improvement" is insufficient justification for finding that Macklin did not meet the Listing. Macklin also states that he meets Listing 12.03 because he "has persistent paranoia and hallucinations that render his ability to adapt to the requirements of daily life fragile, he no longer leaves the house, his mother takes care of him, his symptoms have continued despite

treatment, and he has been hospitalized multiple times due to his mental impairments." (ECF No. 15 at 9–10). The Commissioner responds that the State Agency psychologists' opinions that Macklin did not have marginal adjustment provides substantial evidence for the ALJ's listing determination. The Commissioner also states that Macklin took care of his mother, attended medical appointments, exercised at the park, and cared for himself. Notably, the Commissioner does not appear to argue that the ALJ's reliance on Macklin's improvement alone amounted to substantial evidence to support his conclusion.

Although the ALJ did not give a thorough explanation of why Macklin failed to demonstrate marginal adjustment at Step three, the Court concludes that there is substantial evidence throughout the record to support her decision. *See Holmes v. Comm'r of Soc. Sec.*, No. 1:17-CV-01648, 2018 WL 4442314, at *11 (N.D. Ohio June 11, 2018) ("The court may look to the ALJ's decision in its entirety to justify the ALJ's Step Three analysis." (citations omitted)), *report and recommendation adopted*, No. 1:17-CV-1648, 2018 WL 3544902 (N.D. Ohio July 24, 2018). First, the Court notes that the fact that the ALJ found that Macklin had some improvement does provide some support for the ALJ's conclusion. As outlined above, marginal adjustment is demonstrated by changes that have led to "exacerbation" of a claimant's symptoms and a "deterioration" in his functioning. 20 CFR. § 404 Subpart P, App. 1. Evidence of improvement does not support a finding that a claimant has deteriorated. Second, later in the opinion, the ALJ gave a more thorough explanation of why she did not accept all of Macklin's subjective allegations. (ECF No. 10, PageID #: 75). In relevant part, the ALJ recognized that Macklin stated that he was unable to do household chores or leave the house but reasoned: "However, in March 2020, April 2020, and June 2020, he reported spending his day watching television, trying to stay busy with household chores, going to the park, and increasing his walking for exercise. (ECF No.

10, PageID #: 83). This evidence supports the ALJ's findings that Macklin did not have marginal adjustment because it demonstrates that Macklin can adapt to daily life and function outside of the house. Similarly, the ALJ also explained that

> [M]ental status examination[s] include an appropriate, normal, positive, or euthymic mood, an appropriate, full, or normal affect, oriented to time, place, and person, normal behavior, fair hygiene and grooming, consistent or good eye contact, cooperativeness, logical, linear, coherent, and/or goal-directed thought process, a denial of auditory and visual hallucinations, improving hallucinations and paranoia, not appearing to be internally stimulated, calmness, pleasantness, being neat, clean, and appropriate dressed, moderate insight, a denial of suicidal thoughts, and intact cognition.

(ECF No. 10, PageID #: 83). This provides additional evidence of adjusting well to everyday life. The combination of the above provides substantial evidence to support the ALJ's marginal adjustment decision. Thus, although Macklin pointed to evidence that supported his argument (hospitalizations, continued symptoms despite treatment, and not wanting to leave his house), the Court concludes that there was substantial evidence to support the ALJ's Listing 12.03 conclusion. Accordingly, the Court finds no reason to disturb the ALJ's decision.

## VI.    Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner's final decision denying Macklin SSI and DIB.

IT IS SO ORDERED.

Dated: July 1, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

13